UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
----------------------------------x
PABLO OTERO,                       :

        Plaintiff,                 :     CIVIL ACTION NO.
v.                                       3:99cv2378 (WIG)
                                   :
JOHN C. COLLIGAN,
Personnel Director of the          :
City of Bridgeport;
CITY OF BRIDGEPORT; and            :
HECTOR TORRES, Chief of
Police of the City of Bridgeport,  :

        Defendants.                :
----------------------------------x
```

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following a one-day bench trial of this matter and the submission of post-trial briefs by the parties, the Court hereby renders the following findings of fact and conclusions of law:

## FINDINGS OF FACT

### A.  The Parties

1.  At all times relevant to this action, the plaintiff, Pablo Otero, was a sergeant in the Bridgeport Police Department. Otero at 109.[1]

2.  At all times relevant to this action, John C. Colligan, a defendant in this action who has been sued in his official capacity, was the Personnel Director for the City of Bridgeport.

_____

[1]  References to a witness's name followed by a page number are to his trial testimony as set forth in the July 12, 2005 trial transcript [Doc. # 78].

1

In that capacity, he was responsible for administering the civil service system for the City of Bridgeport, including formulating and holding the promotional and entry-level examinations, and administering the payroll and pensions for the City.  City Charter[2] § 207; Colligan at 5.

3.  At all times relevant to this action, defendant Hector Torres, who has also been sued in his official capacity, was the Chief of Police or Acting Chief of Police for the City of Bridgeport and served as the appointing authority with respect to the promotions that are at issue in this case.  Colligan at 49.

4.  The defendant, the City of Bridgeport, is a municipal corporation organized and existing under the laws of the State of Connecticut.  Pl.'s Ex. 10 at ¶ 1.

**B.  The City's Civil Service System**

5.  Pursuant to the Civil Service Provisions of the City Charter, the Civil Service System of the City of Bridgeport is divided into two main classifications: the unclassified service and classified service.  The unclassified service consists generally of the mayor and all elected and appointed officials; the classified service consists of all other offices or positions, including all positions in the Police Department. Colligan at 6-7; City Charter § 205(a).  The classified service

---

[2]  "City Charter" refers to Plaintiff's Exhibit 1, the Civil Service Provisions of the Charter and Rules of the Civil Service Commission of the City of Bridgeport.

is then divided into two divisions: the competitive and noncompetitive divisions.  The noncompetitive division includes unskilled, manual labor positions, and positions or classes of positions for which the Commission has decided it is not practicable to determine the relative merit and fitness of applicants by competitive examination, such as a physician.  The competitive division includes all other offices or positions of the classified service, including the Police Department.  City Charter § 205.1; Colligan at 7-8.

6.  In December 1999, the authorized strength of the Bridgeport Police Department was 470, with 19 authorized lieutenant positions.  Colligan at 59.

7.  Promotions within the Bridgeport Police Department are determined through the application of the civil service provisions of the City Charter.  Thus, applicants for promotion within the Police Department have their eligibility determined through competitive examinations conducted under the direction of the Personnel Director.  City Charter § 211(b).  The purpose of the examinations is to determine whether the individual taking the examination has the requisite "KSAs" – knowledge, skills, and abilities - for the position.  Colligan at 83.

8.  From the results of the competitive examination, a promotion eligibility list is generated, which ranks the candidates for promotion based upon their performance on the

examination.  Colligan at 9.

9.  When a position in the competitive division of the
classified service becomes vacant and when an appropriate
promotion eligibility list exists for that position, within
thirty (30) days of the date the vacancy was created, the head of
the department notifies the Personnel Director as to whether or
not he wants to fill that vacancy.  If he desires to fill the
vacancy, he requests that the Personnel Director certify the name
of the person eligible for appointment, that being the person at
the top of the list.  Once certified, a candidate for promotion
cannot be rejected by the department head.  Colligan at 9, 11,
48; City Charter § 213.  Additionally, the Personnel Director
cannot bypass a candidate to certify a lower ranking candidate on
the list.  Colligan at 10; City Charter § 213(a).

10.  Thus, promotions are made from the eligibility lists in
strict rank order, from the highest to the lowest, without any
discretion being given to the appointing authority to choose
among a certain number of candidates.  This is called the "Rule
of One." Colligan at 10.

11.  The only exceptions to the "Rule of One" are set forth
in § 212 of the City Charter, which states that the Personnel
Director may refuse to certify the name of an individual eligible
for employment or promotion,

> who is found to lack any of the established
> qualification requirements for the position

4

> for which he applies or for which he has been
> tested, or who is physically unfit to
> effectively perform the duties of the
> position, or who is addicted to the habitual
> use of drugs or intoxicating liquors, or who
> has been guilty of any crime or infamous or
> notoriously disgraceful conduct, or who has
> been dismissed from the public service for
> delinquency, or who has made a false
> statement of any material fact or practiced
> or attempted to practice deception or fraud
> in his application or in his tests, or in
> securing eligibility or appointment.

Colligan at 11-12; City Charter § 212.  Other than § 212, the
Personnel Director has no discretion to refuse to certify the
highest ranking candidate on the promotion eligibility list.
Colligan at 12.

12.  Once a promotional appointment is made, that individual
serves a probationary period of three to six months.  For the
position of Police Lieutenant, the probationary period is six
months.  Colligan at 74.  In order for the probationary
appointment to become permanent, the Chief must make a
recommendation to this effect, which is then approved by the
Personnel Director, and then by the Civil Service Commission.
Colligan at 75.  While it is not uncommon for individuals in
entry level positions to fail their probationary period, it is
unusual for someone at a promotional level to fail.  Colligan at
76.  A probationary employee can be removed only for just cause.
Colligan at 89-90.

**C.  The Personnel Director's Refusal to Certify Otero for
Promotion to Lieutenant**

13.   On January 2, 1998, the Police Lieutenant Revised List H 2103 (also referred to as the "1998 eligibility list" or "promotion list") was established for the position of lieutenant in the Bridgeport Police Department.  Pl.'s Ex. 2; Colligan at 13.  This list expired on January 1, 2000, two years after the first appointment was made.  Colligan at 15-16.  Upon expiration, the list dissolved.  Colligan at 16.

14.   Pablo Otero ranked # 22 on the 1998 eligibility list; Michael Kerwin ranked # 23; and Nancy Lackups ranked # 24.  Pl.'s Ex. 2; Colligan at 16.

15.   On November 4, 1999, two lieutenant positions became vacant due to the appointment of two lieutenants to captain.  Mr. Colligan described this as the "ripple effect."  Pl.'s Ex. 4; Colligan at 17.  In response, Mr. Colligan certified two individuals for promotion to lieutenant, Solomon G. Holly, Jr., who ranked # 18 on 1998 eligibility list, and Michael Kerwin, who ranked # 23.  Colligan at 19; Pl.'s Ex. 5.

16.   Michael Kerwin was certified over Steven Shuck, who ranked # 19, and Pablo Otero, who ranked # 22,[3] based upon Mr. Colligan's exercise of the discretionary powers afforded to him under § 212 of the City Charter.  Colligan at 19-21.

_____

[3]  He was also certified ahead of Richard Mancini, who ranked # 20 and who had retired from the Bridgeport Police Department, and Jerry Brown, who ranked # 21 and who had passed away.  Colligan at 20-21.

17.   Prior to the certifications being made, Acting Police Chief Torres had called Mr. Colligan suggesting that there might be a problem with Sgt. Shuck and Sgt. Otero and asking him to review some materials that he would forward to him.  The materials were sent with a cover letter dated November 10, 1999, in which Chief Torres stated that, in his opinion, the charges of misconduct against Sgt. Shuck and Sgt. Otero were "so grievous as to be contrary to the good order of the Department."  Colligan at 20-21, 53; Def.'s Ex. 502.  The materials concerning Sgt. Otero included a statement dated October 8, 1998, that Sgt. Otero had submitted to former Chief Thomas Sweeney involving a disciplinary matter (Def.'s Ex. 505) and an Office of Internal Affairs interview of Sgt. Otero conducted on November 21, 1998, concerning this same matter (Def.'s Ex. 506).

18.   The disciplinary matter involved an incident in August 1998, involving a "romantic interlude" between Sgt. Otero and a female civilian employee of the Bridgeport Police Department on the fourth floor of the Police Department and a subsequent sexually inappropriate comment made by Sgt. Otero to this same employee.  Colligan at 56 & 57.   Approximately two weeks later, Sgt. Otero and the same employee were involved in another more intimate liaison again on the fourth floor of the Police Department.  Colligan at 57 & 58.

19.   As a result of Mr. Colligan's review of these

7

materials, which Sgt. Otero admitted in his statement were
"reckless[]," "embarrassing," and "unprofessional," Mr. Colligan
determined that Sgt. Otero's name should not be certified for
promotion.  Colligan at 20-21, 53, 55.  In making this
decision, the only documents on which he relied were Otero's
statements (Def.'s Ex. 505 & 506) provided by Chief Torres, as
well as the Chief's statement of his concern about the good order
of the Department.  Colligan at 60 & 61.  In Mr. Colligan's
opinion, Sgt. Otero had been guilty of "infamous or notoriously
disgraceful conduct" under § 212 and was not suitable for
promotion based on this conduct, which evidenced a lack of
leadership ability and bad judgment.  Colligan at 56.

    20.  This was the first time in his fifteen (15) years as
Personnel Director that Mr. Colligan had refused to certify the
top-ranking candidate.  Colligan at 40.  In fact, Mr. Colligan
had requested an opinion from the Assistant City Attorney before
acting.  Colligan at 63.

    21.  On November 10, 1999, Mr. Colligan sent Sgt. Otero a
letter advising him that his name would not be certified from the
list for promotion examination 2103 - Police Lieutenant.  The
letter stated that he was taking this action pursuant to § 212 of
the City Charter and based on the recommendation of Police Chief
Torres and upon review of material presented to him concerning
recent misconduct by Otero.  Sgt. Otero was advised that he had

the right to appeal this action to the Civil Service Commission in writing by November 29, 1999.  Colligan at 64; Pl.'s Ex. 3.

22.  Sgt. Otero did not receive this letter until November 16, 1999.  Otero at 117 & 137.

23.  This was the first communication that Sgt. Otero received from the Personnel Director that he would not be certified for promotion.  Otero at 115-17.  Mr. Colligan had not spoken to him or communicated with him in any fashion prior to sending this letter.  Colligan at 24, 26, 30, 58.

24.  On November 12, 1999, Lieutenant John Carraro was granted a disability retirement, which created another opening for a promotion to lieutenant.  Colligan at 22; Pl.'s Ex. 6.  Mr. Colligan certified Sgt. Nancy Lackups, who ranked # 24 on the 1998 eligibility list, for appointment to that position.  Colligan at 23.  Sgt. Lackups was certified ahead of Sgt. Otero.  Id.

25.  The promotions of Sergeants Solomon Holly, Michael Kerwin, and Nancy Lackups to the rank of lieutenant were made effective November 12, 1999, prior to Sgt. Otero's receipt of the letter from Mr. Colligan.  Pl.'s Ex. 7. But for Mr. Colligan's refusal to certify Sgt. Otero's name for promotion, Sgt. Otero would have been promoted to lieutenant on November 12, 1999, based on his ranking on the 1998 promotion list.

26.   On November 15, 1999,[4] having learned of the promotions through other means, Sgt. Otero advised the Personnel Director in writing of his intention to appeal to the Civil Service Commission the decision not to certify his name from the promotional examination - 2103.  Otero at 118; Colligan at 28; Pl.'s Ex. 8.  Sgt. Otero also filed a grievance with the Union, Local No. 1159, AFSCME, AFL-CIO.  Otero at 119.  By this time, the three promotions at issue had already been made.  Colligan at 28; Otero at 118-20.  However, had Sgt. Otero's appeal been successful, according to Mr. Colligan, Sgt. Otero would have been promoted to the position of lieutenant with back seniority, even though there were no vacant positions and even if the promotion eligibility list had expired.  Colligan at 28-29, 34, 71-72. Either he would have been added as an extra lieutenant or the last-appointed probationary lieutenant would have been bumped out of his or her position.  This was what happened with Sgt. Shuck, whose appeal was successful.  Colligan at 29-30, 35, 96.

27.  The Bridgeport Civil Service Commission is an administrative appeals board that oversees the work of the Civil Service Department and hears administrative appeals of candidates who have not been admitted to an examination or who have not been

_____

[4]  Although Sgt. Otero did not receive Mr. Colligan's letter until November 16th, he had learned of the promotions the day before, on November 15th, while he was at Police Headquarters, at which time he immediately filed his complaint with the Union. Otero at 118.

certified or who have been disqualified.  Colligan at 46, 65.
Their powers derive from the City Charter.  Colligan at 47.

28.  Sgt. Otero's appeal was originally scheduled for a
hearing before the Civil Service Commission on December 14, 1999,
but was continued to December 21, 1999, so that the Commission
and Personnel Director could provide him and his counsel with the
information relied upon by Mr. Colligan in making the decision to
remove Sgt. Otero's name from the eligibility list.  Pl.'s Ex. 8;
Def.'s Ex.; Colligan at 34; Otero at 139.  At the December 21st
hearing, Sgt. Otero was represented by counsel and provided
testimony, as did Mr. Colligan.  Otero at 139.  After a three-
hour hearing, the Commission denied his appeal, by a vote of
three to one, and refused his promotion to the rank of
lieutenant.  Def.'s Ex. 504; Colligan at 31; Otero at 122, 140-
41.

29.  At the hearing, Sgt. Otero informed the Commissioners
of an earlier settlement agreement that he had entered into with
the City and the Union concerning the disciplinary matter that
resulted in Mr. Colligan's refusal to certify his name for
promotion.  Otero at 121; Pl.'s Ex. 25.  The settlement agreement
provided, *inter alia*, that no party could offer or refer to the
Agreement in any proceeding except a proceeding to enforce the
Agreement.  Pl.'s Ex. 25; Otero at 113-14.  The Commissioners
also were presented with materials relating to the settlement of

a prior disciplinary matter, dating back to 1989, involving Sgt. Otero, in which the Police Chief had disciplined Sgt. Otero by imposing the loss of one day of holiday pay.  Otero at 111.  Sgt. Otero did not accept the discipline and filed a grievance through his Union, Local No. 1159, AFSCME, AFL-CIO.  This was resolved through a 1992 settlement agreement between his Local and the City, which provided in relevant part that Sgt. Otero's record would be cleared of any discipline and/or reference to this matter; that this matter would not be used against Sgt. Otero, the Grievant, in any manner.  Pl.'s Ex. 24; Otero at 112-13, 121.

30.  The instant lawsuit, asserting a violation of plaintiff's constitutional right to due process, was filed on December 10, 1999, prior to the expiration of the 1998 eligibility list.

31.  Sgt. Otero did not appeal the Civil Service Commission's unfavorable decision to State Superior Court.  Hr'g Tr. at 43.

## D.  Disciplinary Actions Taken Against Sgt. Otero

32.  Prior to Mr. Colligan's refusal to certify Sgt. Otero for promotion to Lieutenant, Sgt. Otero had been disciplined by the Police Department as a result of the August 1998 incidents discussed above.  In September 1998, the female civilian employee had filed a complaint of sexual harassment by Sgt. Otero with then Police Chief Thomas Sweeney.  At the request of the Police

Chief, the Office of Internal Affairs investigated the allegations, and reported to the Police Chief that Sgt. Otero had violated certain rules of the Department's Policy and Procedures and Rules and Regulations.  Pl.'s Ex. 10 at ¶ 17.  Pursuant to the collective bargaining agreement, the Police Chief referred Sgt. Otero to the Board of Police Commissioners for discipline. Id. at ¶ 18.  On August 17, 1999, the City through the Labor Relations Office, Bridgeport Police Union, Local No. 1159, AFSCME, AFL-CIO, and Sgt. Otero entered into a Settlement Agreement.  Id. at ¶ 19; Pl.'s Ex. 25; Winterbottom at 187. Edmund Winterbottom, the Director of Labor Relations for the City, negotiated the settlement agreement on behalf of the City. The settlement provided that, "in full and final resolution of those charges against Sergeant Pablo Otero,"  Sgt. Otero would lose 17 holidays, effective immediately, which discipline would not be appealed or challenged in arbitration or any other forum. The Agreement further provided that it was without prejudice or precedent and no party could offer or refer to the Agreement in any proceeding except a proceeding to enforce the Agreement. Pl.'s Ex. 25; Otero at 113-14.  This settlement agreement did not involve the issue of whether Sgt. Otero was suitable to serve as a lieutenant in the Police Department.  Winterbottom at 187.

33.  The Bridgeport Board of Police Commissioners, however, did not accept this Agreement and conducted its own extensive

investigation.  On November 3, 1999, the Board of Police Commissioners commenced disciplinary hearings against Sgt. Otero. The hearings took place over seven (7) days in November and December 1999 regarding the sexual harassment complaint filed by the female civilian employee against Sgt. Otero.  Otero at 154; Winterbottom at 184-85; Pl.'s Ex. 10.  Sgt. Otero was represented by Union counsel at those hearings.  Otero at 154-55. Ultimately, on April 4, 2000, the Board of Police Commissioners concluded that Sgt. Otero had "failed to use good judgment and follow acceptable practices and principles while on duty.  His conduct violates Bridgeport Police Department Rules 1.1, 1.2, 1.5, 4.2 and, inasmuch as his actions tended to contribute to the creation of a hostile work environment, the City of Bridgeport's Sexual Harassment Policy."  Def.'s Ex. 11 at 30.  As a result, the Board voted to suspend Sgt. Otero from employment for sixty (600 consecutive days without pay, suspend his eligibility for promotion for a period of one year from the date of the decision, and require him to undergo sexual harassment training sufficient to satisfy the requirements of Conn. Gen. Stat. § 46a-54(15)(B). Def.'s Ex. 511 at 30; Otero at 122-24.

34.  The hearings before the Board of Police Commissioners did not involve the removal of plaintiff from the eligibility list for the position of lieutenant, and the Board of Police Commissioners could not reverse the decision of the Civil Service

Commission removing plaintiff from the eligibility list for the position of lieutenant. Stipulations, Tr. at 176.

35. The Board of Police Commissioners has no appellate jurisdiction over the actions of the Personnel Director or the Bridgeport Civil Service Commission nor does it have the authority to rescind the action of the Civil Service Commission, removing plaintiff from the eligibility list for police lieutenant. Stipulations, Tr. at 175-76.

36. On October 7, 1999, the Union, Local No. 1159, filed a complaint, as amended on April 9, 2001, and May 8, 2002, with the Connecticut State Board of Labor Relations against the City for violating the Municipal Employees Relations Act, when it violated the two settlement agreements entered into in 1992 and 1999. The City denied the complaint. The State Board of Labor Relations conducted hearings and ultimately issued a decision on August 9, 2004, finding that the City had failed to abide by the two settlement agreements when it used them in connection with the disciplinary proceedings against Sgt. Otero. Pl.'s Ex. 10. With respect to the 1999 agreement, the Board found that the City had violated the agreement when it suspended Sgt. Otero for sixty (60) days, required him to pay for counseling, and declared him ineligible for promotion for a period of one year. The Board also found that the City's use of Sgt. Otero's conduct as a basis for removing his name from the promotional list in 1999 violated

the settlement agreement.  Pl.'s Ex. 10 at 13.  As relief, the
Board ordered that Sgt. Otero be made whole for losses he
suffered as a result of the sixty-day suspension and that he be
reimbursed for counseling expenses.  With respect to the lost
promotional opportunity, the Board found that it would not serve
the purposes of the Municipal Employees Relations Act to order
the City to retroactively promote Sgt. Otero.

> First, Otero could have appealed the 1999
> decision to remove his name from the list, to
> the Civil Service Commission.  There is no
> indication in the record that he did so and
> we are unaware of any further proceedings
> concerning the grievance that was filed
> regarding this matter.  Also, Otero did not
> apply for the next round of promotional
> opportunities.  Although Otero believed he
> was ineligible to apply, he removed himself
> without confirming that the City would deny
> his application and at least in part because
> of his own emotional state at the time.
> Finally, although the record seems clear that
> Otero was first on the promotional list in
> 1999, we cannot conclude with certainty that
> he would have been promoted in spite of this
> issue.

Pl.'s Ex. 10 at 13-14.  Thus, the Board ordered that Sgt. Otero
be allowed to apply for the next round of promotional
opportunities for which he is qualified.  Pl.'s Ex. 10.

     37.  On January 4, 2000, pursuant to Article 6, § 7 of the
Collective Bargaining Agreement between the City and the Union,
Local No. 1159 filed a grievance against the City for failing to
promote Sgt. Otero to the rank of lieutenant.  This grievance was
heard by the American Arbitration Association ("AAA") on August

16, 2000.  Pl.'s Ex. 11; Otero at 122, 156.  The issue, as framed
by the Arbitrator, was whether the sixty-day suspension of Sgt.
Otero was for just cause.  Pl.'s Ex. 11 at 47.  In an arbitration
award dated July 11, 2001, the Arbitrator concluded that the City
did not have just cause to impose a sixty-day suspension and
found that the weight of the evidence failed to prove that sexual
harassment occurred.  The Arbitrator did, however, find that Sgt.
Otero had engaged in inappropriate conduct and reduced his
suspension to twenty-one (21) days and ordered that he be
reimbursed for any training costs he incurred because of the
decision of the Board of Police Commissioners.  Otero at 123;
Pl.'s Ex. 11.  The Arbitrator also found that the 1992 settlement
agreement (see ¶ 30, supra) should not have been considered by
the Board in its prior hearing.  Pl.'s Ex. 11 at 59 n.3.

38.  The next police lieutenant examination was administered
in April 2001.  Colligan at 81; Def.'s Ex. 509.  Sgt. Otero did
not take that examination.  Colligan at 82; Otero at 126.  Sgt.
Otero testified that the reason he did not apply was because of
the Board of Police Commissioner's decision that he could not be
promoted for one year from the date of their ruling.  Otero at
126, 151-52.  Mr. Colligan testified that had Sgt. Otero applied
to take the examination, he would have referred the matter to the
City Attorney for an interpretation of whether he was precluded
from taking the examination based on the one-year waiting period

17

set forth in his agreement with the City.  Colligan at 101-02.

39.  Generally, the results of a promotional examination are released between the 75th and 90th day after the examination is given.  An eligibility list is not created until the thirty-day appeal period has run, following the release of the scores. Colligan at 100.

40.  A promotional eligibility list was generated based on the April 2001 examination.  The City began making promotions from that list on December 12, 2001.  Colligan at 82.

### CONCLUSIONS OF LAW

1.  Plaintiff, Sgt. Otero, has brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging that his procedural due process rights under the Fourteenth Amendment of the United States Constitution were violated by Defendants when he was denied a promotion to lieutenant without prior notice and the opportunity for a pre-deprivation hearing.[5]

2.  The Fourteenth Amendment prohibits any State from depriving a person of life, liberty, or property without due process of law.  "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of

---

[5]  Although counsel for both sides have also briefly addressed a substantive due process claim under the Fourteenth Amendment in their post-trial memoranda, as this Court made clear following the trial, the Court views this case as raising only a procedural due process claim, based upon the allegations of Plaintiff's complaint and the evidence presented at trial.

interests that a person has already acquired in specific benefits." Board of Regents of State Colleges v. Roth, 408 U.S. 564, 576 (1972).  In order to prevail on a § 1983 procedural due process claim, a plaintiff must first identify a property right protected by the Due Process Clause; second, he must show that the State deprived him of that right; and third, he must establish that he was not afforded adequate procedural due process rights prior to the deprivation of his protected property interest.  See Local 342, Long Island Public Service Employees v. Town Bd. of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994).  In order to have a property interest that is subject to due process protections, a plaintiff must have more than a "unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

## A.  Property Interest

3.  The threshold questions that must be addressed are whether Plaintiff has established that his interest in being promoted to lieutenant was a property interest and whether the Fourteenth Amendment protects that interest. Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

4.  It is well-settled that the Constitution protects but does not create property interests. McMenemy v. City of Rochester, 241 F.3d 279, 286 (2d Cir. 2001).  Protected property interests are "created and their dimensions . . . defined by

existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." <u>Roth</u>, 408 U.S. at 577.  Thus, a plaintiff must point to some policy, law, contract, or mutually explicit understanding that both confers the benefit and limits the discretion of the defendant to rescind the benefit.  <u>See Med Corp., Inc. v. City of Lima</u>, 296 F.3d 404, 409-10 (6th Cir. 2002).

5.  The Court must then determine whether, under federal law, this property interest rises to the level of constitutional protection.  <u>See Ciambriello</u>, 292 F.3d at 317.  "[N]ot every contractual benefit rises to the level of a constitutionally protected property interest."  <u>Ezekwo v. NYC Health & Hospitals Corp.</u>, 940 F.2d 775, 782 (2d Cir.), <u>cert. denied</u>, 502 U.S. 1013 (1991) (internal quotation marks and citations omitted).  While state law determines whether a public employee has a property interest in continued employment, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."  <u>Id.</u> (internal quotation marks and citations omitted). In making this determination, the Court is required to look to whether the interest would be protected under state law and must weigh the importance to the holder of that right.  <u>Id.</u>

6.  It is well-settled under state law that a public

employee has a property interest in continued employment if the employee is guaranteed continued employment absent "just cause" for discharge.  Hunt v. Prior, 236 Conn. 421, 437 (1996) (holding that a police officer who could not be removed from office except for cause had a constitutionally protected property interest in his continued employment with the department); Clisham v. Board of Police Commissioners, 223 Conn. 354, 360-61 (1992) (police chief who could not be terminated without just cause had protected property interest in employment); Bartlett v. Krause, 209 Conn. 352, 367 (1988) (holding that a "preeminent source of a property right in employment cases is the 'for cause' requirement in the removal process of the employee"); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985); Ciambriello, 292 F.3d at 313; Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991).

7.  Additionally, the courts have repeatedly held that a public employee does not have a property interest in a promotion where the department head retains discretion over whom to select for the promotional position, see, e.g., McMenemy, 241 F.3d at 286,[6] or where there was no objective entitlement, formal or

---

[6]  In McMenemy, the plaintiff contended that the fire chief's verbal promise to promote him to the rank of captain was sufficient to establish a property interest in the promotion. The Second Circuit rejected this argument, finding that the chief's promise of promotion at a future date did not strip him of the discretion to choose another candidate once a position did become available.  241 F.3d at 286.  "Even if the Chief at one time intended to promote McMenemy and even if he expressed that

informal, to the promotion, Schwartz v. Thompson, 497 F.2d 430, 433 (2d Cir. 1974).  However, the Second Circuit has noted that an entitlement to a promotion might arise in a situation where the promotion was "virtually a matter of right – for example, where it was solely the function of seniority or tied to other objective criteria," Schwartz, 497 F.2d at 433, or where the "policies and practices of the institution were such that an entitlement to the [promotion] existed." Ezewkwo, 940 F.2d at 783;[7] see also Tarlaian v. City of Providence, No. Civ. A. 97-149T, 1998 WL 34100800(D.R.I. Apr. 6, 1998) (suggesting that a property interest might arise in a case where a police lieutenant's entitlement to promotion to captain was no longer dependent on any subjective determination by the appointing authority).

8.  Written rules, regulations, statutes, and judicial decisions are not the sole affirmative sources of protected

---

intention as a promise, the City's broad discretion in matters of promotion, granted by statute, prevent [sic] that promise from ripening into an entitlement." Id.

[7]  In Ezekwo, the plaintiff, a third-year ophthalmology resident, was denied a promotion to Chief Resident.  The Court found that the hospital had an established practice, which was high-lighted in its informational documents, of awarding the position to all third-year residents on a rotating basis. Additionally, the plaintiff had been verbally advised that she would receive this promotion and would receive a salary differential as a result.  The Court held, "[w]e think that this course of conduct, coupled with Ezekwo's reasonable reliance thereon, created a contractual right that rose to the level of a significant property interest that would be protected under state law."  940 F.2d at 783.

property interests under state law.  Well-established patterns of practice and existing understandings are recognized as alternative sources of protected property interests.  See Leis v. Flynt, 439 U.S. 438, 442 (1979) ("A claim of entitlement under state law, to be enforceable, must be derived from statute or legal rule or through a mutually explicit understanding."); see also Paskvan v. City of Cleveland Civil Service Comm'n, 946 F.2d 1233, 1236-37 (6th Cir. 1991) (holding that a police office had sufficiently alleged a protected property interest in promotion to sergeant in order of rank on the eligibility list to survive a motion to dismiss, where he alleged that a practice on the part of the City of always promoting in rank order despite the discretion afforded in the City's charter under the "rule of three" to choose among the three highest ranking candidates).

9.   Thus, the issue before the Court is whether the civil service provisions of the Bridgeport City Charter and the past practices of the City gave Plaintiff a legitimate claim of entitlement to promotion to the position of lieutenant in the Bridgeport Police Department.

10.   In this case, the civil service provisions of the Bridgeport City Charter define the scope of those entitlements. Statutory provisions regulating appointments under civil service rules are mandatory, and strict compliance with the civil service provisions of the City Charter is required.  See Cassella v.

23

<u>Civil Service Commission</u>, 202 Conn. 28, 35 (1987); <u>Walker v.</u>
<u>Jankura</u>, 162 Conn. 482, 487 (1972).  The City Charter provides
for promotions to be made according to a "Rule of One."  After a
vacancy occurs and the department head determines that he wishes
to fill that vacancy, he notifies the Personnel Director and
requests that he certify the name of the person eligible for
appointment.  Promotions are made from the eligibility lists in
strict rank order, from the highest to the lowest, without any
discretion being given to the appointing authority to choose
among candidates.  Thus, once a candidate is certified, the
department head cannot reject that candidate.  The City Charter §
213 expressly provides that once a candidate's name is certified
for a vacant position, "[t]he appointing authority shall
forthwith appoint such person to such a vacant position."
Moreover, the Personnel Director cannot bypass a candidate to
certify a lower ranking candidate.  The only discretion afforded
the Personnel Director, whereby he may refuse to certify a
candidate off a promotional list, is set forth in § 212 of the
City Charter, which essentially requires a showing of "good
cause."  And, in this case, Mr. Colligan testified that, in his
fifteen years as Personnel Director, this was the first time that
he had refused to certify the top-ranking candidate.

     11.  Sgt. Otero's situation is different than the plaintiff
in <u>McMenemy</u>, where the promotional vacancy was not yet available

and where the department head was afforded discretion in determining whom to promote.  See Note 6, supra.  It is also different from the plaintiff in Violissi v. City of Middletown, 990 F. Supp. 93, 97 (D. Conn. 1998), where a police sergeant challenged the City's decision not to promote him to lieutenant due to irregularities in the examination process, which kept his name off the eligibility list, but where there was no policy or practice that controlled who would receive a promotion or the criteria the Mayor had to apply in selecting a candidate for promotion from the eligibility list.  Similarly in LeFebvre v. Shanley, No. 3:96cv1277(PCD) (Ruling on Motion for Summary Judgment, Oct. 9, 1997) (Dorsey, J.), the court found that an Enfield police officer, who was number one on the sergeant promotion list but passed over for promotion after the top three candidates were interviewed, did not have a protected property interest in the promotion.  In each of these cases, the courts found that there was no property interest in the promotion because of the discretion afforded the appointing authority or the contingencies involved before a promotion was made.  See also Meyer v. City of Joplin, 281 F.3d 759, 762 (8th Cir. 2002) (holding that police officer's expectations of being promoted based on his rank as one of the top three candidates on the promotional examination did not rise to the level of a protected property interest due to the police chief's ability under the

charter and personnel rules to consider the candidate's more
subjective qualifications in addition to the competitive
examination score); Oladeinde v. City of Birmingham, 963 F.2d
1481, 1486 (11th Cir. 1992) (holding that no protected interest
arose from the mere recommendation of a promotion), cert. denied,
507 U.S. 987 (1993); Stuart v. Roche, 951 F.2d 446, 455 (1st Cir.
1991) (holding that "where an appointing authority may consider
factors in addition to the applicant's ranking on an eligibility
list, a police officer's expectation of promotion based on that
list will not rise to the level of a 'property interest' entitled
to constitutional protection"), cert. denied, 504 U.S. 913
(1992); United States v. City of Chicago, 869 F.2d 1033, 1036-37
(7th Cir.) (holding that, because of the unfettered discretion
afforded the promoting authorities in choosing among the five
highest rated promotional candidates, state law did not create an
entitlement to promotion from sergeant to lieutenant in the
police department), cert. denied sub nom Earth v. City of
Chicago, 493 U.S. 855 (1989); but see Schwartz v. Thompson, 497
F.2d at 432-33 (suggesting circumstances where a promotion would
be a protected property interest, "for example, where it was
solely a function of seniority or tied to other objective
criteria").

12.  Defendants argue that, because the City Charter § 213,
vested the Appointing Authority — in this case, Acting Chief

26

Torres – with the discretion to determine whether to request that a name be certified to file a vacancy, an employee who was next in line on the promotional list was not automatically entitled to the position.  This argument, however, overlooks Sgt. Otero's status at the time of the alleged deprivation.  As of November 4, 1999, Sgt. Otero had taken the promotional examination, his name had been placed on the Police Lieutenant eligibility list, and Acting Police Chief Torres had requested that the Personnel Director certify two names for promotion to fill the two existing lieutenant vacancies.  Had Mr. Colligan not exercised the discretion afforded to him under § 212 of the City Charter in deciding not to certify Sgt. Shuck's and Sgt. Otero's names for promotion, Sgt. Otero's name would have been certified for promotion and the Police Chief would have been required to promote him.

13.  Defendants next rely on § 212 of the City Charter as grounds for refuting Sgt. Otero's claim that, by virtue of his position on the eligibility list, he had a legitimate expectation of promotion.  Defendants argue that § 212 vested in the Personnel Director the authority and discretion to refuse to certify the name of highest ranking candidate for promotion.  Section 212 is akin to provisions in other city charters or employment agreements or collective bargaining agreements that provide an employee can only be discharged for cause.  In Drogan

27

v. Ward, 675 F. Supp. 832, 835 (S.D.N.Y. 1987), the court held
that where the civil service rules provided that a promotional
candidate's name would be entered on the eligibility list in the
order of his final rating on the promotional examination, the
regulations created a "benefit" under state law that went beyond
a mere "abstract need" or "desire" or "unilateral expectation."
Id. (citing Roth, 408 U.S. at 577).  Therefore, the court
concluded that the civil service rules invested in a promotional
candidate who had successfully completed the examination a
"legitimate claim of entitlement to" the right to be considered
for a promotion.  Id. (citing Roth, 408 U.S. at 577).

14.  Defendants also cite to the six-month probationary
period that lieutenants are required to serve before their
appointments become permanent, see City Charter § 213,[8] as
evidence that Sgt. Otero did not have a vested property interest
in the position of police lieutenant.  Defendants, however,
ignore two other significant portions of § 213.  First, § 213
provides that "[a]ppointments shall be regarded as taking effect

---

[8]  Section 213 provides in relevant part:

> To enable appointing officers to exercise
> sound discretion in the filling of positions,
> no appointment, employment or promotion in
> any position in the competitive division of
> the classified service shall be deemed final
> until after the expiration of a period of
> three to six months probationary service as
> may be provided in the rules of the civil
> service commission.

upon the date when the person certified for appointment shall report to duty," and once a person is certified, he cannot be "laid off, suspended, given a leave of absence from duty, transferred or reduced in pay or grade except for reasons which will promote the good of the service, specified in writing, and after an opportunity to be heard by the commission and then only with its consent and approval."  Second, a probationary appointee may be terminated only if he is deemed "unfit for service," in other words, for cause.[9]

15.  Mr. Colligan testified that, while it was not unusual for appointees in entry level positions to fail their probationary period, it was uncommon for a promotional appointee to be removed and he confirmed that such removal could only be for cause.  Colligan at 76, 89-90.  In this case, Sgt. Otero's due process claim relates to the City's failure to certify his name for a promotional appointment to the position of lieutenant. The fact that he could later be removed from this promotional position for cause does not affect his property interest in the appointment.

16.  Thus, the Court finds that Sgt. Otero had a protected

---

[9]  Section 213 further provides:

> During the probationary period, they may terminate the employment of the person so certified, during the performance test thus afforded, upon observation or consideration of the performance of duty, they shall deem him unfit for service. . . .

property interest under the Due Process Clause of the Fourteenth
Amendment in his appointment to lieutenant based upon the civil
service provisions of the City Charter, the fifteen-year history
of the Personnel Director's always certifying the top-ranking
candidate, and the lack of discretion vested in the Police Chief
to reject the certified candidate.

## B.  The Process Due

17.  Having determined that the Due Process clause applies,
the next question is what process is due.  <u>Cleveland Bd. of
Educ.</u>, 470 U.S. at 541.  "Unlike the existence of a property
interest, which finds its origins in state law, minimum
procedural requirements are a matter of federal law."
<u>Ciambriello</u>, 292 F.3d at 319 (internal quotation marks and
citations omitted).  The type of due process procedure that is
required depends on the circumstances of the parties, the nature
of the dispute, and the time available.  <u>Goldberg v. Kelly</u>, 397
U.S. 254, 268-69 (1970).  The fundamental requirement of any such
process is the opportunity to be heard at a meaningful time and
in a meaningful manner.  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333
(1976).  "The determination of whether one is entitled to a pre-
deprivation hearing is fact-specific, as 'due process is flexible
and calls for such procedural protections as the particular
situation demands.'"  <u>Ciambriello</u>, 292 F.3d at 319 (quoting
<u>Mathews v. Eldridge</u>, 424 U.S. at 334).

30

18.   It is undisputed that Sgt. Otero did not receive notice
of the charges against him prior to the time that he was
disqualified for promotion to lieutenant.  Mr. Colligan's letter
to Sgt. Otero was post-marked November 10, 1999, the same date
that Mr. Colligan refused to certify his name.  Sgt. Otero did
not receive this letter until November 16, 1999, at which time
the promotions to lieutenant had already been made. Additionally,
the letter failed to provide Sgt. Otero with notice of the
specific reasons his name was not certified for promotion.  It
merely stated, "You are hereby notified that your name will not
be certified from the list for promotion examination – Police
Lieutenant.  I am taking this action based on the recommendation
of Acting Police Chief Hector Torres and upon review of material
presented to me pertaining to recent misconduct on your part."
While Sgt. Otero probably understood what "recent misconduct"
meant, he would not have known what Chief Torres had recommended
or what materials had been presented to Mr. Colligan.  In fact,
it was not until mid-December 1999 that Sgt. Otero received a
letter of explanation from the Personnel Director as to why he
had been denied certification, with copies of the documents on
which the decision was based.

19.   In order to determine whether the Constitution requires
a pre-deprivation hearing, the Court is required to engage in
what has been referred to as the "Mathews balancing test," which

31

involves balancing the following three factors:

> First, the private interest that will be
> affected by the official action; second, the
> risk of an erroneous deprivation of such
> interest through the procedures used, and the
> probable value, if any, of additional or
> substitute procedural safeguards; and
> finally, the Government's interest, including
> the function involved and the fiscal and
> administrative burdens that the additional or
> substitute procedural requirements would
> entail.

Ciambriello, 292 F.3d at 319-20 (quoting Mathews v. Eldridge, 424
U.S. at 335); see also Brody v. Village of Port Chester, 434 F.3d
121, 135 (2d Cir. 2005)(applying the three factors delineated in
Mathews to assess the adequacy of the proceedings); Ezekwo, 940
F.2d at 783-84 (applying the Mathews balancing test).

20.  First, the private interest at stake was Sgt. Otero's
interest in being promoted to lieutenant before the promotional
eligibility list expired, which was a legitimate and substantial
interest.  As a result of not being promoted, he was denied a
significant pay increase, greater authority and responsibilities
that come with being a lieutenant, and the professional prestige
and opportunities associated with this higher rank within the
Police Department.  Additionally, his name had been on the
eligibility list for nearly two years, and the list was to expire
in less than two months.  The promotional opportunity that he
possessed in November 1999 was one that might never come his way
again, since there is no way of knowing how he would fare on the

next examination or where his name would appear on the eligibility list.  The opportunity to be promoted to lieutenant was of great importance to Sgt. Otero's career in the Bridgeport Police Department.

21.  Second, the risk of an erroneous deprivation of Sgt. Otero's interest through the procedures used was high.  "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971).

22.  Third, the governmental interest in not giving Sgt. Otero prior notice and holding a pre-deprivation hearing was minimal.  The City did not produce any evidence of an urgent need for the promotions, nor the burden that would result by a minimal delay to allow for a pre-deprivation hearing.  The eligibility list would not have expired for nearly two months, which would have provided ample time for Mr. Colligan to meet with Sgt. Otero.  However, the risk the City ran in not having a pre-deprivation hearing was that it could end up with too many lieutenants or be faced with having to demote a lieutenant, a matter that is fraught with constitutional implications, if the outcome of the hearing was that Sgt. Otero should have been promoted.  See Ciambriello, 292 F.3d at 319; Sowers v. City of Fort Wayne, 737 F.2d 622, 625 (7th Cir. 1984); Reilly v. Levitt,

No. 86 CIV 5220, 1988 WL 49187 (S.D.N.Y. May 6, 1988); Broadnax
v. City of New Haven, 270 Conn. 133, 166 (2004).

    23.   The balance of these three factors weighs decidedly in
favor of affording Sgt. Otero notice of the charges against him
and an opportunity to be heard before the appointment of a new
lieutenant was made.  The circumstances do not present what the
Supreme Court has characterized as an "extraordinary situation"
where some valid governmental interest is at stake, which would
justify postponing the hearing until after the event.  See Boddie
v. Connecticut, 401 U.S. 371, 379 (1971); see also United States
v. James Daniel Good Real Property, 510 U.S. 43, 48-49 (1993);
Roth, 408 U.S. at 570, n.7 (stating that "it is fundamental that
except in emergency situations . . . due process requires that
when a State seeks to terminate (a protected) interest . . ., it
must afford notice and opportunity for hearing appropriate to the
nature of the case before the termination becomes effective")
(internal citations and quotation marks omitted); Zinermon v.
Burch, 494 U.S. 113, 128-29 (1990) (discussing the circumstances
under which a post-deprivation hearing will satisfy the due
process requirements); see also New Windsor Volunteer Ambulance
Corps, Inc. v. Meyers, 442 F.3d 101, 115 (2d Cir. 2006)(holding
that, although post-deprivation remedies can provide
constitutionally sufficient process in circumstances where the
deprivation was caused by a state agent's conduct that was

"random" and "unauthorized," on the rationale that the state
cannot reasonably anticipate such conduct, the principle does not
apply where the deprivation was caused by high-ranking officials
who had "final authority over the decision-making process")
(internal citations omitted); Velez v. Levy, 401 F.3d 75, 101 (2d
Cir. 2005)(holding that the "random and unauthorized" exception
to a pre-deprivation hearing did not apply where the actor in
question is an official with "final authority over significant
matters") (internal citations omitted).

24.  Defendants assert that, even if Sgt. Otero had a
property interest in the promotion, he was afforded sufficient
due process by virtue of the post-deprivation hearing before the
Civil Service Commission to satisfy the requirements of due
process.  Relying on the testimony of Mr. Colligan, they argue
that he would have been made whole had he been successful before
the Commission because the City would have been obligated to
promote him and has the authority to do so, pursuant to §
206(d)[10] of the City Charter.  While § 206(d) provides a

_____

[10]  Section 206(d) of the City Charter provides:

Whenever the appointing authority of any
department desires to establish a new
permanent position in the classified service,
the personnel director shall make or cause to
make an investigation of the need of such
position and report his findings to the
commission.  If upon consideration of the
facts the commission determines that the work
of the department can not be properly and
effectively carried on without the position,

mechanism for the establishment of a new position, such as an additional lieutenant's position, it is anything but automatic. Section 206(d) requires an investigation by the Personnel Director and a finding by the Civil Service Commission that the work of the department can not be properly and effectively carried out with out the establishment of this new position.

25.   Additionally, Defendants argue that the City could have "reversed" one of promotions if Sgt. Otero had been successful in his appeal to the Commission.  This argument, however, overlooks the rights of the appointed candidate and the requirements of § 216, which as discussed above, provide that a even a probationary employee can only be removed based upon a finding that he or she is "unfit for service," i.e., for cause.

26.   Thus, the Court concludes that Sgt. Otero was entitled to notice of the charges against him and an opportunity to be heard in a meaningful manner and at a meaningful time before the promotions were made.  While it is unlikely that Mr. Colligan would have changed his mind and certified Sgt. Otero's name, Sgt. Otero should have been given an opportunity to address the "charges" against him and to explain why they should not affect his eligibility for promotion.  The administrative and financial burdens imposed on the City by such a requirement are minimal.

---

> it shall classify and allocate the new
> position to the proper class after the
> position has been established by the common
> council.

Because the City did not do this, Sgt. Otero was not afforded the process that he was due before he was passed over for promotion.

## C.  Qualified Immunity

27.  Defendants argue that they are entitled to qualified immunity for acts done in their official capacities, since their conduct did not violate clearly established constitutional rights of which a reasonable person would have known or, alternatively, that it was objectively reasonable for them to believe that their acts did not violate clearly established rights.  They point to the fact that Mr. Colligan consulted with the Associate City Attorney regarding the legality of his action before he passed over Sgt. Otero for promotion.

28.  The immunity to which a public official may be entitled in a § 1983 action depends initially on the capacity in which he is sued.  To the extent that a public official is sued for damages in his individual capacity, depending on the nature of the functions he performs, he may be entitled to absolute or qualified immunity.  Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).  "These defenses of absolute immunity and qualified immunity are the official's personal privileges for his official acts.  They do not belong to the governmental entity, and the entity itself is not allowed to assert them."  Id. (citing Owen v. City of Independence, 445 U.S. 622, 638 (1980)).

29.   However, to the extent that a public official is sued in his official capacity, "'the <u>only</u> immunities available to [him] . . . are those that the governmental entity possesses.'" <u>Id.</u> (quoting <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991))(emphasis and alterations in original).  A claim against a municipal official is tantamount to a claim against the governmental entity itself. <u>see</u> 1A Martin A. Schwartz, <u>Section 1983 Litigation: Claims and Defenses</u> § 7.01 (4th ed. 2005). "Therefore, since the governmental entity itself possesses no personal privilege of absolute or qualified immunity, those privileges are available to governmental officials only with respect to damage claims asserted against them in their individual capacities.  They are not available to the extent the officials are sued in their official capacities." <u>Ying Jing Gan</u>, 996 F. 2d at 529; <u>see also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166-67 (1985)(holding that an official in a personal capacity action may be able to assert personal immunity defenses, but in an official capacity action, these defenses are unavailable); <u>Ford v. Reynolds</u>, 316 F.3d 351, 355 (2d Cir. 2003) (holding that the defense of qualified immunity protects only individual defendants sued in their individual capacity, not government entities, and it protects only against claims for damages, not against claims for equitable relief); <u>DeLoreto v. Ment</u>, 944 F. Supp. 1023, 1032 (D. Conn. 1996)(applying the defense of qualified immunity to plaintiff's

claims against defendants in their individual capacity); <u>Owen v. City of Independence</u>, 445 U.S. at 650 (holding that municipalities do not enjoy qualified immunity for good-faith constitutional violations by their officials); <u>see generally</u> 1A Martin A. Schwartz, <u>Section 1983 Litigation: Claims and Defenses</u> § 9A.02[D] (4th ed. 2005).

30.   In this case, the complaint clearly states that Defendants Colligan and Torres are named in their official capacities only.  Pl.'s Compl. ¶¶ 8 & 9.  Therefore, they, like the City, are not entitled to qualified immunity.

**D. The Remedy**

31.   Having determined that Sgt. Otero's constitutional rights were violated, the question becomes what is the appropriate remedy.  Sgt. Otero urges the Court to order his "instatement"[11] to the position of lieutenant as an equitable remedy, as well as awarding him back pay as make-whole relief.

---

[11]   Sgt. Otero asks this Court to order his "instatement" to the position of lieutenant. "The equitable remedy of ordering promotion to a position illegally denied is referred to as 'instatement.'" <u>Bullen v. Chaffinch</u>, 336 F. Supp. 2d 357, 358 (D. Del. 2004) (citations omitted). "The law of instatement tracks the law of reinstatement.  Thus, like reinstatement, instatement is considered the preferred remedy to compensate an aggrieved party for loss of future earnings as a result of illegal, adverse employment actions, including actions that violate 42 U.S.C. § 1983." <u>Id.</u> at 359.  If instatement is not feasible because a position no longer exists or because of the animosity between the parties, an award of front pay as compensation for future lost wages may be appropriate.  <u>Julian v. City of Houston</u>, 314 F.3d 721, 728 (5th Cir. 2002).

Defendants respond that a pre-deprivation hearing would not have changed anything, since Mr. Colligan relied on Sgt. Otero's own statements, and, thus, he should not be made a lieutenant by this Court nor receive a back-pay award.  Mr. Colligan testified that it was "highly unlikely" that he would have changed his mind not to certify Sgt. Otero's name for promotion if he had interviewed him prior to making his decision.  Colligan at 58.

32.  It is well-settled that to recover compensatory damages in a § 1983 action, a plaintiff must prove more than a violation of his constitutional rights.  He must also demonstrate that the constitutional deprivation caused him some actual injury.  <u>Miner v. City of Glens Falls</u>, 999 F.2d 655, 660 (2d Cir. 1993).  "Absent a showing of causation and actual injury, a plaintiff is entitled to only nominal damages."  <u>Id.</u>  Thus, a finding that Sgt. Otero has been deprived of a constitutional right does not automatically entitle him to a substantial award of damages.  <u>See</u> <u>Kerman v. City of New York</u>, 374 F.3d 93, 123 (2d Cir. 2004).

33.  As the Supreme Court held in <u>Carey v. Piphus</u>, 435 U.S. 247, 260 (1978), if a defendant has deprived the plaintiff of liberty or property without a due process hearing, but the adverse action would have been taken even if a proper and timely hearing had been held, the plaintiff will not be entitled to recover damages as compensation for injuries caused by the deprivation, since the failure to accord procedural due process

could not properly be viewed as the cause of the deprivation. Thus, in this case, if Sgt. Otero would have been denied the promotion even if he had been afforded notice and a hearing, compensatory damages cannot be awarded for the denial of the promotion.

34.  The Second Circuit has placed the burden on the plaintiff to prove each element of his § 1983 claim, including those elements relating to damages.  Miner, 999 F.2d at 660. Thus, the plaintiff must show that the deprivation for which he seeks compensation would not have occurred had proper procedures been observed.  Id.  The Second Circuit, however, has recognized a limited exception in the extraordinary circumstance where the defendant has prevented the plaintiff from obtaining access to the evidence and, therefore, made it impossible for the plaintiff to carry his burden of proof.  Id. at 660-61; see also Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990); Quartararo v. Hoy, 113 F. Supp. 2d 405, 418 (E.D.N.Y. 2000).  When this occurs, the burden shifts to the defendant to prove that the deprivation of the plaintiff's property or liberty interest would have taken place even if the defendant had complied with the requirements of due process.  Patterson, 905 F.2d at 570 (holding that the burden of proving causation had shifted to the defendants because the defendants were responsible for the absence of two witnesses, one of whom would have corroborated plaintiff's testimony);

41

Quartararo, 113 F. Supp. 2d at 418.  The Second Circuit has held
that the defendant's failure to hold a pre-deprivation hearing,
however, is not the kind of "impossibility that shifts the burden
of proving causation."   Miner, 999 F.2d at 660-61.  Thus, in
this case, the burden was on Sgt. Otero to prove that he would
have received the promotion had he been afforded a pre-
deprivation hearing.

35.  Sgt. Otero relies on his status as the top-ranking
candidate on the promotional list and the lack of discretion
afforded the police to reject a candidate who has been certified.

36.  Mr. Colligan testified that, in making his decision, he
relied on Plaintiff's own statements and the statement of the
Police Chief expressing his concerns that the charges of
misconduct against Sgt. Otero were "so grievous as to be contrary
to the good order of the Department."

37.  In his statement to Chief Sweeney dated October 8,
1998, Sgt. Otero, although maintaining that his contacts with the
female civilian employee were consensual, admitted that on August
5, 1998, he kissed the female employee on the fourth floor record
storage area until such time as they heard Capt. Carter
approaching; at the end of that day, he said something to the
effect of their having sex when he returned from having surgery;
and on August 17, 1998, he kissed her again while at work, that
he was physically aroused and moved her arm towards his genital

area.  Def.'s Ex. 505.  Plaintiff described his conduct as
reckless, embarrassing, and unprofessional.  Id.

38.  In his sworn statement to the Office of Internal
Affairs investigator on November 21, 1998, Sgt. Otero admitted
again to these same facts.  Def.'s Ex. 506.

39.  Mr. Colligan testified that it was "highly unlikely"
that a pre-deprivation hearing would have changed his mind.
Colligan at 58.

40.  Indeed, at the post-deprivation hearing conducted by
the Civil Service Commission on December 21, 1999, the
Commissioners, after hearing testimony from Sgt. Otero and Mr.
Colligan and reviewing the exhibits, voted three-to-one to deny
the appeal.

41.  Additionally, even the Connecticut State Board of Labor
Relations, in its August 4, 2004 decision that the City had
violated the Municipal Employees Relations Act, held it could not
conclude with certainty that Sgt. Otero would have been promoted
even in spite of the City's violation of the two settlement
agreements.

42.  This Court likewise cannot conclude that Sgt. Otero
would have been promoted if he had been afforded a pre-
deprivation hearing.  Based on all of the evidence in the record,
which the Court has carefully reviewed, the Court finds that Sgt.
Otero has not carried his burden of proving that the violation of

43

his procedural due process rights was the proximate cause of the injuries he sustained -- in other words, he has not shown that he would have been promoted had he received a pre-deprivation hearing.  Moreover, in light of the uncontrovertible evidence of Sgt. Otero's appalling misconduct, the Court's conclusion would be the same even if the burden of proof rested with the Defendants.

43.  Under the circumstances, the Court holds that Plaintiff is not entitled to "instatement" or compensatory damages.

44.  Nevertheless, having proven a deprivation of his right to procedural due process, Sgt. Otero is entitled to an award of nominal damages not to exceed one dollar ($1.00).  Carey, 435 U.S. at 266-67.

45.  This also qualifies Sgt. Otero as a "prevailing party" who is entitled to recover attorney's fees and costs under 42 U.S.C. § 1988.  Farrar v. Hobby, 506 U.S. 103, 109-110 (1992).

46.  Accordingly, the Court holds that Defendants, the City of Bridgeport, and John Colligan and Hector Torres in their official capacities, are liable under 42 U.S.C. § 1983 for a violation of Plaintiff's right to procedural due process under the Fourteenth Amendment and awards Plaintiff, Pablo Otero, nominal damages in the amount of $1.00.  The Court further finds that Plaintiff is entitled to an award of attorney's fees and costs and directs Plaintiff's counsel to submit a motion for fees

and costs within twenty (20) days of the date of this decision, to which Defendants will have twenty-one (21) days to respond.

SO ORDERED, this ___17th__ day of May, 2006, at Bridgeport, Connecticut.


                              ___/s/ William I. Garfinkel___
                              WILLIAM I. GARFINKEL
                              United States Magistrate Judge